IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| v. | : : CASE NO: |
| JOHNNY WILL MURRAY, JR., | : 7:23-cr-24—WLS-ALS : |
| Defendant. | : : |

## ORDER

Before the Court is Defendant's Motion to Suppress on the Basis of the 4th Amendment (Doc. 52) ("Motion to Suppress"). Therein, Defendant Johnny Will Murray, Jr. requests the Court suppress all evidence seized by law enforcement on November 11, 2021, during the execution of a search warrant. Defendant contends the evidence should be suppressed because the affidavit made by Investigator Keith Newman ("Newman Affidavit") (Doc. 52-1) dated November 5, 2021, supporting the search warrant either intentionally or with reckless disregard for the truth, contained material omissions or misrepresentations of fact. Upon full review and consideration of the Record, including the briefs of the parties and arguments of counsel, and for the reasons set forth below the Motion to Suppress is **DENIED**.

I. **FACTUAL BACKGROUND**

A. **Newman Affidavit**

On November 5, 2021, Investigator Keith Newman ("Inv. Newman") obtained a search warrant supported by the Newman Affidavit. The warrant authorized officers to search the "entire premises and curtilage known as: 132 Jones Lane, Moultrie, Colquitt County, Georgia" ("Premises" or "residence"). (Doc. 52-1 at 1). The warrant provided directions to and a description of the Premises as follows: "From the intersection of Jones Lane and Overlook Drive travel south on Jones Lane to the second residence on one's right. Said residence will be a white doublewide mobile home with a green roof." (*Id.*) The warrant further stated that the Premises were under the control of and occupied by Johnny Murray. (*Id.*) The

1

Newman Affidavit included the following statements with respect to information provided to law enforcement from three sources identified as Sources #1, #2, and #3:

> Source #1 told affiant and Lt. Corona[1] that there is a black male known only as "John" that lives on Jones Lane off of Overlook Drive that sells a lot of methamphetamine from his residence on Jones Lane. Source #1 stated that it knows this because it has purchased methamphetamine from John numerous times within the past several months. Source #1 also stated that "John" drives a blue Chevy Camaro. Source #1's motive for assisting affiant is for consideration on a pending charge. Also affiant has no knowledge of nor any reason to believe that there is any animosity between source #1 and Johnny Murray. This source has since given information within the past two months on one occasion that has led to the recovery of a large quantity of illegal drugs and the arrest of two persons for the violation of the Georgia Controlled Substance Act.

(Doc. 52-1 at 1). After receiving this information, Lt. Corona drove by the Premises and observed a vehicle parked at a white doublewide mobile home. Upon checking the vehicle license plate, Inv. Newman learned that it was a Chevy Camaro registered to Johnny Murray at the Premises address. (*Id.*) Inv. Newman avers that within three days prior to submitting his Affidavit he was contacted by Source #2, a previously reliable confidential source. The Newman Affidavit provided the following information as to Source #2:

> Affiant believes source #2 to be reliable because within the past one year, source #2 has given information and assistance to Investigator Channing McDowell, who is a Georgia Certified Peace Officer employed with the Colquitt County Sheriff's Office as a drug investigator, on seven separate occasions that led to the recovery of quantities of illegal drugs and the arrest of two persons for the Violation of the Georgia Controlled Substance Act. Source #2's motive for assisting affiant is for monetary reward. Also, affiant has no knowledge of nor any reason to believe that there is any animosity between source #2 and Johnny Murray.
>
> During affiant's conversation with source #2, source #2 stated that it knows a black male known only as "John" who sells methamphetamine from his residence on Jones Lane. Source #2 knows this because it has seen "John" sell methamphetamine from his residence in the past and "John" was representing the substance to be methamphetamine for sale.
>
> . . . .
>
> Also, in corroboration, within the past three days, Investigator Channing McDowell, . . . had a conversation with a confidential source whose reliability has yet to be determined and will be referred to as source #3 from this point

---

[1] Lt. David Corona, is a Georgia Peace Officer employed by the Moultrie Police Department. (Doc. 52-1 at 1).

2

> forward. Source #3's motive for assisting affiant is for consideration on a pending charge. Affiant has no knowledge of nor any reason to believe that there is any animosity between source #3 and Johnny Murray.
>
> During Investigator McDowell's conversation with source #3, source #3 stated that it knows a man named Johnny that lives on Jones Lane that sells a lot of methamphetamine. Source #3 stated that it knows what methamphetamine looks like because it has purchased methamphetamine from Johnny in the past from his residence on Jones Lane.

(*Id.* at 2). To further corroborate the information provided by Source #s 1, 2, and 3, within three days prior to submitting his Affidavit, Inv. Newman conducted a controlled buy by sending Source #2 to the Premises. The Newman Affidavit includes the following information related to that controlled buy:

> [A]ffiant provided source #2 with official Colquitt County DET funds and instructed it to go to the residence of "John" on Jones Lane and purchase a quantity of methamphetamine from him. Source was searched prior to it going and making the buy and no contraband was located. Investigator Justin Searcy followed source #2 to the immediate area of Overlook Drive and Jones Lane. A short time later source #2 left Jones Lane and being followed by Investigator Searcy and returned to meet affiant where it turned over to affiant a quantity of suspected methamphetamine that it had purchased from "John" at 132 Jones Lane. Source #2 stated that Johnny's house is a white mobile home and the address is l32 Jones Lane. Affiant field tested the suspected methamphetamine and it tested positive for methamphetamine.

(*Id.*) Further, Inv. Newman corroborated the information provided by the Sources by checking the records in the Colquitt County Tax Assessor's office and driving by the Premises himself. In doing so he confirmed that the residence at 132 Jones Lane is the second residence on the right travelling south on Jones Lane off Overlook Drive and that the photo in the tax assessor's records matched the white mobile home located on the Premises. (*Id.*)

On November 11, 2021, members of a joint drug enforcement unit executed the search warrant at the Premises. (Doc. 57 at 1). The search resulted in officers obtaining three ounces of marijuana, two ounces of methamphetamine, four firearms, $5,600 in United States currency, cell phones, ammunition, and digital scales. (*Id.* at 1–2).

## II.    PROCEDURAL BACKGROUND

On March 14, 2023, the Grand Jury handed down a three-count Indictment (Doc. 1) against Defendant charging him with Possession with Intent to Distribute Methamphetamine,

3

Possession of a Firearm by a Convicted Felon,[2] and Possession of a Firearm in Furtherance of a Drug Trafficking Crime. (*Id.*) The Indictment asserts the offenses occurred on or about November 11, 2021. (*Id.*) Defendant was arraigned in this Court on April 13, 2023, and was ordered to be detained pending trial. (Doc. 15).

On May 24, 2024, Defendant filed a Motion to Compel Production of Video Evidence of Search or to Suppress Evidence (Doc. 35) ("Video Motion") and a Motion to Compel Production of Evidence Related to Alleged Controlled Buys or in the Alternative to Dismiss (Doc. 36) ("Controlled Buys Motion"). The Government's responses to such motions (Docs. 39 and 40) were filed June 5, 2024, and an evidentiary hearing was held on July 31, 2024. In the Video Motion Defendant requested production of all video footage relevant to the November 11, 2021 search or in the alternative that any evidence related to the search be suppressed. During the July 31, 2024 hearing, Defense Counsel acknowledged that she believed the Government had produced all videos known to the Government at that time and the Court denied the Video Motion as moot. (Doc. 49 at 1).

The Court determined that the Controlled Buys Motion was an attack on the Newman Affidavit upon which the search warrant was based and the motion was in essence a disguised motion for a *Franks*[3] hearing. The Court found that Defendant failed to make a substantial preliminary showing that the Newman Affidavit deliberately contained false statements or omitted matters that were essential to the magistrate judge's finding of probable cause to issue a warrant for officers to search Defendant's residence. Thus, the Court also denied, without prejudice, the Controlled Buys Motion.

On September 23, 2024, Defendant filed the instant Motion to Suppress. The Government filed a timely Response (Doc. 57), and the Court scheduled an evidentiary hearing on the Motion to Suppress for February 26, 2025.[4] While both the Government and Defendant made oral arguments at the hearing, neither presented witnesses. After confirming

---

[2] Defendant is alleged to have had four firearms in his possession: (1) a Norinco, Model: SKS, Rifle, Serial Number: 7103990, (2) a Ruger, Model: EC9s, Serial Number: 454-56803, (3) a Bushmaster Model: XM15-E2S Rifle, Serial Number: BK1910017, and (4) a Jenning, Model: Bryco 59, Serial Number: unknown/obliterated.

[3] *Franks v. Delaware*, 438 U.S. 152 (1978).

[4] The hearing was initially scheduled for December 10, 2024, but was continued due to Government counsel's unexpected medical leave.

4

that neither party had additional evidence to present, the Court closed the Record. Thus, the Defendant relies on the Randall Affidavit (described below) and the Government relies on the Newman Affidavit. The Court permitted the parties to file post-hearing briefs, all of which have been filed, and the Motion to Suppress is ripe for decision. (*See* Docs. 61, 65, 70). The trial of this matter has been continued to the Court's August 2025 Valdosta Trial Term. (Doc. 61).

### III.   LAW

The Fourth Amendment of the Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "We have made clear that '[t]he individual challenging the search bears the burdens of proof and persuasion.'" *United States v. Mobley*, 808 F. App'x 899, 901 (11th Cir. 2020) (quoting *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998)); *see also United States v. Jackson*, 618 F. App'x 472, 474 (11th Cir. 2015) ("The proponent of a motion to suppress has the burden to allege, and if the allegations are disputed, to prove, that his own Fourth Amendment rights were violated by the challenged search or seizure.").

### IV.   THE MOTION TO SUPPRESS

Citing *Franks*, Defendant seeks to suppress evidence seized during the November 11, 2021 search on the basis that Inv. Newman deliberately or recklessly included false statements, or failed to include material information related to the controlled buy described in the Newman Affidavit. Defendant asserts such statements or omissions were essential to the magistrate judge's finding of probable cause. (Doc. 52 at 2). Defendant attacks the controlled buy under *Franks* on two theories.

First, that the buy never took place at the Premises and the assertion in the Newman Affidavit that Source #2 purchased methamphetamine from Defendant is totally false. In support of this theory, Defendant provided the Affidavit of Ella Randall (Doc. 52-2) ("Randall Affidavit"). Ms. Randall is Defendant's domestic partner and has resided at the Premises since October 2019. (Randall Aff. ¶¶ 2–3). Ms. Randall states she has "never witnessed nor am I aware of any drug sales or controlled buys at 132 Jones Lane, Moultrie, Georgia, while I have resided at this address. I also do not believe that drug sales or drug buys [have occurred] at

5

132 Jones Lane during my time residing there." (*Id.* ¶ 5). The Premises are equipped with a security surveillance system that records anyone who comes to the front area of the Premises, and the video footage broadcasts on a video screen in Ms. Randall's bedroom. (*Id.* ¶ 6). The security system was functioning on November 11, 2021, when officers arrived at the Premises to execute the search warrant, but after the officers left, the system was no longer working. (*Id.* ¶ 7). Shortly thereafter, the security system was checked and it was discovered that the hard drive had been removed from the surveillance system. (*Id.* ¶¶ 7–8). Ms. Randall believes "the law enforcement officers who executed the search warrant must have removed the hard drive." (*Id.* ¶ 9). The Randall Affidavit does not indicate whether "shortly thereafter" means the security system was checked within hours, days, weeks, or months after the officers left the Premises and no other support is given for Ms. Randall's belief that officers removed the hard drive. Also, as to Ms. Randall's stated belief that no drug sales or controlled buys occurred at the residence, they are just that, her belief, her opinion. This is not a *fact* the Court may rely on as a part of its review.

Second, Defendant contends that the controlled buy was not properly controlled because Inv. Searcy nor any other officer actually observed the alleged transaction between Defendant and Source #2 and the officers were relying solely on Source #2's statements that the purchase occurred. Defendant asserts that Inv. Newman intentionally or recklessly omitted this allegedly material information from his Affidavit.

Defendant also challenges the sufficiency of the Newman Affidavit on the basis that the controlled buy was not properly conducted and on the basis that information provided by Sources #1 and #3 was stale.

Below, the Court first addresses Defendant's *Franks* arguments and follows with Defendant's arguments as to the sufficiency of the Newman Affidavit.

### A. Defendant failed to make the necessary substantial preliminary showing to support his *Frank's* allegations

"There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant." *Franks v. Delaware*, 438 U.S. 154, 171 (1978). However, a defendant may invalidate a warrant "if he makes a 'substantial preliminary showing' that (1) the affiant deliberately or recklessly included false statements, or failed to include material information,

6

in the affidavit; and (2) the challenged statement or omission was essential to the finding of probable cause." *United States v. Arbolaez*, 450 F.3d 1283, 1293 (11th Cir. 2006) (per curiam) (quoting *Franks*, 438 U.S. at 155–56). Defendant's initial burden is not easily met. *Id.*

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

*Franks*, 438 U.S. at 171. Here, Defendant contends that a controlled buy never took place at the Premises. Certainly, if this statement is true, then the Newman Affidavit contained a false statement. As support, Defendant points to Ms. Randall's Affidavit stating that she never witnessed any drug sales and does not believe any drug sales or controlled buys occurred at the Premises. Because the Government did not present evidence at the hearing refuting Ms. Randall's sworn statements, Defendant appears to believe that the Randall Affdidavit is conclusive evidence that no drug sales or controlled buys occurred at the Premises. Defendant is incorrect.

The fact that Ms. Randall has never witnessed drug sales, is not aware of drug sales, and does not believe any drug sales occurred at the Premises are not reliable statements that a controlled buy did not take place as described in the Newman Affidavit. Ms. Randall is away from the Premises for work so there are significant gaps in time when she would not have been home to observe whether drug sales occurred.[5] She attempts to foreclose this gap by stating that the Premises are equipped with a security surveillance system that would have recorded anyone who came to the front of the Premises. (Doc. 52-2 ¶ 6). It is unknown whether Source #2 went to the front door of the Premises or whether he would have been seen on the surveillance video. However, to the extent, if any, such video footage may have supported her statements, Ms. Randall did not state in her Affidavit that she personally

---

[5] Ms. Randall's statements that "none of my adult children who would have been home even during times when I was at work are aware of any controlled buys or drugs sales happening at our address" (Doc. 52-2 ¶ 5), are hearsay. Even so, again, the fact that someone is unaware of an event occurring does not provide proof that an event did not occur.

reviewed video footage for the date of the controlled buy—on or about November 2, 2021,[6]—and that the footage showed that no one came to their front door on that date. Nor was such video presented as evidence at the February 26, 2025 evidentiary hearing. Finally, Ms. Randall's belief that the officers who executed the search warrant removed the surveillance equipment hard drive is unsupported by any evidence and is purely speculative.

At the February 26, 2025 hearing, Defense Counsel argued that Ms. Randall "found no evidence from anything remaining from those [video] cameras that any controlled buy would have taken place and essentially affirms that through her affidavit that no controlled buy happened." (Hrg. Tr. 7:4–8, Feb. 26, 2025, Doc. 62 [hereinafter "Hrg. Tr."]). As noted above, nowhere in the Randall Affidavit is there such an unequivocal statement. Rather, Ms. Randall states: "I have *never witnessed nor am I aware of* any drug sales or controlled buys at" the Premises, "while I have resided at this address. I also do not *believe* that drug sales or drug buys" occurred at the Premises "during my time residing there." (Doc. 52-2 ¶ 5 (emphasis added)). The inference that Defense Counsel desires the Court to adopt is not reasonable. Merely because Ms. Randall did not witness any sales, is not aware of any sales, and does not believe any sales occurred at the Premises, does not mean such sales did not occur. It does not mean that the controlled buy between Source #2 and Defendant did not occur as described in the Newman Affidavit. Defendant was not prevented from producing Ms. Randall at the hearing to provide facts in support of her opinion and beliefs. In short, Defendant provided limited facts which do not reasonably and adequately support the inferences and conclusory allegations Defendant suggests the Court should draw. Defendant failed to provide any reliable proof or to make a substantial preliminary showing that the Newman Affidavit falsely stated that a controlled buy occurred.

Defendant also asserts that the Newman Affidavit intentionally or at least recklessly failed to disclose to the magistrate judge that the actual controlled buy was not observed by law enforcement and that the controlled buy was based entirely on the word of Source #2. (Doc. 52 at 6–7). Defendant asserts these are material omissions and that had this information been specifically disclosed, "there would not have been sufficient evidence for the judge to

---

[6] According to the Newman Affidavit, the controlled buy occurred within three days of Inv. Newman signing such Affidavit on November 5, 2021.

8

have found probable cause to issue the warrant for the search." (Hrg. Tr. 32:1–7; *see also* Doc. 65 at 2 (asserting the omissions were materials and are the type that would have misled the magistrate judge who made the decision to issue the search warrant). As the Government notes in its brief, Inv. Newman did not state that Inv. Searcy observed the actual purchase of methamphetamine. Rather, as quoted above, the Newman Affidavit simply described the events that occurred. "The fact that the officers' definition of a 'controlled purchase' is perhaps not as stringent as the one [defendant] might hope for does not mean that the officers were deliberately lying when they testified that they believed the purchase to be a 'controlled' one." *United States v. Harris*, 172 F. App'x 950, 958-59 (11th Cir. 2006) (per curiam).

Defendant, without evidence, equates a belief that no sale occurred and law enforcement officers not visually observing the actual sale as requiring the finding that no sale occurred, that Inv. Newman knew that if he had told the magistrate that the sale was not observed, then no warrant would have been issued. This inference and conclusion is not supported by the actual evidence before the Court. Neither Inv. Newman nor any officer was required to observe the actual transaction. Law enforcement set up the sale via Source #2, searched Source #2 prior to the buy and no controlled substances were found,[7] provided it with the funds for the purchase, observed its travel to and from Defendant's residence, and took into possession and tested the substance Source #2 had in its possession upon reaching the agreed meeting place. This information was provided to the magistrate and this evidence provided support for the issuance of the search warrant. Defendant's belief that since there is no evidence that Inv. Newman or any other officer actually saw the "buy," that no buy occurred; and therefore, the statement that a buy occurred is false and that falsity was knowingly or intentionally omitted from the Newman Affidavit is without legal or factual basis.

Further, Defendant failed to provide a sworn statement that factually supports a finding that Inv. Newman knowingly or recklessly omitted material information from the Newman

---

[7] Defendant contends that there is no evidence that Source #2's vehicle was searched. Nor is there evidence that the vehicle was not searched. The Government states in its post-hearing brief that "[t]he practice of searching an informant before a controlled buy includes searching the person as well as the vehicle being driven to the buy." (Doc. 70 at 5). The Court notes, again, that although the parties were given the opportunity to present additional evidence, neither party took advantage of that opportunity. Therefore, the Court is limited to the actual evidence in the Record.

Affidavit. *Arbolaez*, 450 F.3d at 1293 (finding defendant failed to make the necessary substantial preliminary showing where there was "no affidavit or otherwise sworn statement alleging [officer] knowingly or recklessly included false statements in the search warrant affidavit"). Thus, the Court finds that Defendant failed to make a substantial or adequate preliminary showing to support his allegations that Inv. Newman knowingly, or recklessly, omitted material information from the Newman Affidavit. An inference without sufficient factual or legal support cannot be relied on by the Court to meet Defendant's burden.

Accordingly, the Court finds that Defendant's *Franks* challenges are not adequately supported in his Motion to Suppress.

### B. The Newman Affidavit provided sufficient information to support a finding of probable cause

Before a warrant is issued, a neutral and detached magistrate judge must review the warrant and make his own independent assessment as to whether the warrant and its underlying affidavit contain a sufficient amount of information to support a finding of probable cause. *United States v. Martin*, 297 F.3d 1308, 1317 (11th Cir. 2002). The Supreme Court "has emphasized that courts should pay great deference to a magistrate judge's determination of probable cause." *McLane Co. v. E.E.O.C.*, 581 U.S. 72, 84 (2017), *as revised* (Apr. 3, 2017) (citation and internal quotation marks omitted). "And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983) (alterations adopted) (internal quotation marks omitted).

A probable cause affidavit must contain sufficient information to conclude, based on the totality of the circumstances, that a fair probability exists that seizable evidence would be found in the place sought to be searched. *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999) (per curiam); *Martin*, 297 F.3d at 1314 (internal quotation marks omitted).

> Specifically, the affidavit should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity. The information in the affidavit must also be fresh. If an informant is mentioned in the affidavit, the affidavit must also demonstrate the informant's veracity and basis of knowledge. However, when there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant.

10

*Id.* (alterations adopted) (citations and internal quotation marks omitted). Defendant raises arguments as to the sufficiency of the Newman Affidavit on the bases that the controlled buy using Source #2 was not properly controlled and that the information provided by Sources #1 and #3 was stale.

   1. The "controlled buy" was properly conducted.

Defendant's position is that for a buy to qualify as a "controlled buy," the transaction must be personally observed by law enforcement. The Government concedes that the actual transaction between Source #2 and Defendant was not personally observed by law enforcement. Therefore, according to Defendant, the transaction should not have been characterized as a "controlled buy" in the Newman Affidavit. Neither party cited Eleventh Circuit precedent describing the steps that are required for law enforcement to conduct a valid "controlled buy" to support a magistrate judge's finding of probable cause to issue a search warrant.[8] And Defendant, in particular, cited no cases or other authority, treating personal observation of the physical transfer of drugs and money between the CI and a defendant as a requirement for a valid controlled buy.

While reported case law is scarce, *Brundidge*, 170 F.3d 1350 and unreported Eleventh Circuit cases are instructive and do not support Defendant's contention that for a controlled buy to be valid, law enforcement officers must personally observe the transaction. In *United States v. Roundtree*, 299 F. App'x 905 (11th Cir. 2008), the defendant challenged the search warrant on the basis that the officers did not observe the actual transfer of drugs between the CI and defendant and the CI was the only person to observe cocaine in defendant's apartment.

---

[8] In its own research, the Court did not locate an Eleventh Circuit case listing factors that are required for a valid "controlled buy," although cases show that some or all of the following factors may be present: (1) the confidential informant ("CI") and its vehicle, if applicable, are searched prior to the buy to establish that the CI does not have drugs in its possession; (2) the CI is provided with government funds that are usually marked in some manner; (3) officers travel with or follow the CI to the buy location; (4) officers maintain knowledge of CI's location and, if possible, some degree of visual or audio contact with CI during the controlled buy; (5) officers observe CI leave the buy location; and (6) officers follow CI to a prearranged meeting place where CI is searched again for drugs obtained and any remaining government funds. These factors were gathered from multiple unreported cases in which defendants appealed the denial of a motion to suppress based at least in part on allegations that a controlled buy was invalid or the warrant affidavit omitted material information regarding the controlled buy. *See United States v. Floyd*, No. 22-12693, 2023 WL 5603213 (11th Cir. Aug. 30, 2023) (per curiam); *United States v. Roundtree*, 299 F. App'x 905 (11th Cir. 2008) (per curiam); *United States v. Bramlett*, 232 F. App'x 940 (11th Cir. 2007) (per curiam); *United States v. Horne*, 198 F. App'x 365 (11th Cir. 2006) (per curiam); and *United States v. Harris*, 172 F. App'x 950 (11th Cir. 2006) (per curiam).

11

The facts regarding the controlled buy in *Rountree* are substantially the same as those here. The officers used a CI to make a controlled buy. Prior to the buy, the officers searched the CI and provided him with marked funds. The officers maintained constant visual contact as the CI approached the buy location, saw defendant open the door and let the CI into defendant's apartment. After about three minutes, the officers observed the CI leave the apartment and then walk to a predetermined location where the officers again searched the CI who had crack cocaine and no longer had the funds. *Roundtree*, 299 F. App'x at 906. When defendant challenged the search warrant, the Eleventh Circuit found upon the above facts that "[i]t is clear that a properly executed controlled buy, as is the one at issue here, is sufficient standing alone, to establish probable cause." *Id.* at 907; *see also United States v. Horne*, 198 F. App'x 865, 871 (11th Cir. 2006) (per curiam) ("A common sense view to the realities of normal life, leads to the conclusion that a residence contains drugs when a person enters that residence with no drugs and exits approximately one minute later with drugs." (citations and internal quotation marks omitted)).

Also similar to Defendant's argument here, in *Brundidge*, the defendant's main contention was that probable cause did not exist for a search warrant because the warrant affidavit failed to reflect independent police corroboration of the CI's story regarding the controlled buy. The Circuit noted that Brundidge had cited no case in which independent police corroboration was treated as a requirement and stated that "we think requiring independent police corroboration—as a per se rule in each and every case—is contrary to *Gates* and other precedent." *Brundridge*, 170 F.3d at 1353. Rather, the Circuit used the CI's veracity and basis of knowledge as a guide for finding that the affidavit made a sufficient showing of probable cause to justify the search warrant. *Id.*

As noted above, the Government contends that even though the controlled buy was not observed by law enforcement, it was a valid controlled buy. This Court agrees. The Newman Affidavit clearly provided the magistrate judge with a clear picture of the steps taken to set up and control the buy between Source #2 and Defendant as follows: (1) Source #2 was searched prior to the buy and no contraband was found; (2) Source #2 was provided with DET funds; (3) Inv. Searcy followed Source #2 to the immediate area of the buy location at the intersection of Overlook Drive and Jones Lane; (4) Inv. Searcy again followed Source #2

12

when it left the buy location and went to the meeting place where Inv. Newman retrieved the methamphetamine that Source #2 had purchased from Defendant. In addition Source #2 correctly described the Premises where he purchased the methamphetamine as being a white mobile home located at 132 Jones Lane. (Doc. 70 at 5).

Further, in assessing Source #2's veracity and basis of knowledge, the Court notes that within a year, Source #2 had given information and assistance to law enforcement on seven separate occasions that led to the recovery of quantities of illegal drugs and the arrest of two persons. Source #2's basis of knowledge shows that Source #2 knew a black male known as "John," Source #2 had seen "John" sell methamphetamine from his residence on Jones Lane in the past, and "John" was representing the substance to be methamphetamine for sale. After the sale was completed, Source #2 gave Inv. Newman methamphetamine which Source #2 had purchased from "John," and Source #2 identified Johnny's house as a white mobile home located at l32 Jones Lane. Based on this assessment and considering that the manner in which the officers conducted the controlled buy reflects they were present and monitoring Source #2 as closely as prudent, the Court finds the controlled buy was properly executed and the information provided by Source #2 was reliable. While "a properly executed controlled buy, as is the one at issue here, is sufficient standing alone, to establish probable cause" *Roundtree*, 299 F. App'x at 907, the Court also considers Defendant's assertion that the information provided by Sources 1 and 3 was stale.

  2. <u>The information provided by Sources #1 and #3 was not stale</u>.

Defendant contends that the information provided by Source #1 was stale because it had purchased methamphetamine from Defendant "numerous times within the past several months." (Doc. 52-1 at 1). Source #3's information was stale because it had purchased methamphetamine from Defendant "in the past" without a timeline. The Eleventh Circuit has "developed a staleness doctrine in the context of probable cause which requires that the information supporting the government's application for a warrant must show that probable cause exists at the time the warrant issues." *United States v. Bervaldi*, 226 F.3d 1256, 1264 (11th Cir. 2000). There is, however, no particular time limit for when information becomes stale, and whether information is stale must be determined based on the facts of each case. *Id.* at 1265. Where the affidavit "recites activity indicating protracted or continuous conduct, time

13

is of less significance." *Id.* (citation and internal quotation marks omitted). And "stale information is not fatal if the government affidavit updates, substantiates, or corroborates the stale material." *United States v. Harris*, 20 F.3d 445, 450 (11th Cir. 1994); *see also United States v. Green*, 40 F.3d 1167, 1172 (11th Cir. 1994) (rejecting staleness challenge where affidavit indicated CI purchased drugs the month before affidavit was submitted). Here, the controlled buy conducted with Source #2's assistance occurred three days prior to the date the Newman Affidavit was submitted. This controlled buy certainly updated and corroborated the information Sources #1 and #3 provided that Defendant was selling methamphetamine from his residence.

Accordingly, the Court finds that the information provided by Sources #1 and #3 was not stale considered in the context of the updated information obtained during the controlled buy.

## V. CONCLUSION

Based on the totality of the circumstances, the Court finds that the Newman Affidavit contained sufficient information to conclude that there was a fair probability that illegal drugs would likely be found at Defendant's residence when searched. The search warrant provided a substantial basis for the magistrate judge's finding of probable cause, and Defendant has failed to meet his burden to show otherwise.

Accordingly, Defendant's Motion to Suppress on the Basis of the 4th Amendment (Doc. 52) is **DENIED**.

By separate Order, this matter will be set for pretrial conference and for trial during the Court's Valdosta August 2025 trial term beginning August 4, 2025.

**SO ORDERED**, this 30th day of April 2025.

/s/W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**