IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CASE NO: |
| | : | 7:23-cr-24–WLS-ALS |
| JOHNNY WILL MURRAY, JR., | : | |
| | : | |
| Defendant. | : | |
| | : | |

### ORDER

Before the Court are the following motions filed by Defendant, Johnny Will Murray, Jr., as well as the Government's responses, and Defendant's reply briefs, if any, with respect to each motion:

1. Motion to Dismiss Count Two and Count Three (Doc. 74) ("Motion to Dismiss"), Government's response (Doc. 82), and Defendant's reply (Doc. 92);

2. Motion *in Limine* to Exclude all References to any Alleged "Controlled Buys" in this Case (Doc. 75) ("Controlled Buys Motion") and Government's response (Doc. 83);

3. Motion *in Limine* to Exclude all Jail Calls (Doc. 76) ("Jail Calls Motion") and Government's response (Doc. 84); and

4. Motion *in Limine* to Exclude all References to Mr. Murray's Prior Criminal History/Agreement to Stipulate as to Status as Convicted Felon (Doc. 77) ("Prior Convictions Motion" and together with the Motion to Dismiss, Controlled Buys Motion, and Jail Calls Motion, the "Defendant's Motions"), Government's response (Doc. 86), and Defendant's reply (Doc. 93).

The Defendant's Motions are fully briefed, ripe for decision, and are each addressed in turn below.

I. **BACKGROUND AND PROCEDURAL HISTORY**

On March 12, 2025, the Grand Jury handed down a three-count Superseding Indictment (Doc. 63) against Defendant charging him with: Count One—Possession with

Intent to Distribute Methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A),[1] Count Two—Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2),[2] and Count Three—Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A). After his arrest on the original Indictment, Defendant consented to detention in light of a state sentence. (Doc. 15). Defendant was arraigned on the Superseding Indictment on March 26, 2025, and again ordered to be detained. (Doc. 67).

After resolution of pretrial motions, including a motion to compel and motion to suppress, a pretrial conference was held on October 1, 2025. The trial of this matter is scheduled to begin Monday, November 3, 2025, at 8:30 a.m. in Valdosta, Georgia.

## II.  LAW AND ANALYSIS

### A.  Motion to Dismiss

Defendant seeks to have the Court dismiss the Counts involving firearms (Counts Two and Three) because the Government destroyed the firearms allegedly recovered in this case prior to filing the Indictment. The firearms were destroyed pursuant to a state court order requiring that "[t]he firearms . . . be destroyed in accordance with the local policy of the appropriate agency that has custody of the firearms." (Doc. 74 at 2–3). Defendant contends that the destruction of the firearms denies him a constitutional guarantee of access to evidence, and that the Government had a duty to preserve the evidence for trial and sentencing purposes. (Id. at 3). Defendant contends that the destruction of the firearms deprives him of the "opportunity to have the firearms examined for fingerprints or DNA evidence which may have established that he never handled any firearms." (Id. at 15). Further, Defendant asserts there are material misrepresentations in police reports involving the firearms, that only two of the four firearms were photographed, and there are no photos showing the location where the firearms were found. Defendant requests that the Government's evidence regarding the

---

[1] The original Indictment was handed down on March 14, 2023. The Superseding Indictment charges the same offenses, except in Count One of the original Indictment Defendant was charged under § 841(b)(1)(C) instead of § 841(b)(1)(A).

[2] Defendant is alleged to have had four firearms in his possession: (1) a Norinco, Model: SKS, Rifle, Serial Number: 7103990, (2) a Ruger, Model: EC9s, Serial Number: 454-56803, (3) a Bushmaster Model: XM15-E2S Rifle, Serial Number: BK1910017, and (4) a Jenning, Model: Bryco 59, Serial Number: unknown/obliterated.

firearms (photos and written report) be suppressed. (Doc. 74 at 15). This statement makes it unclear whether Defendant intended to make an alternate argument as to suppressing such evidence, but a formal motion to suppress the police report and photographs was not filed.

The Government contends that the issue of possession of the firearms, or lack thereof, is a jury question. The Government asserts Counts Two and Three are sufficient to apprise Defendant of the alleged charges so he can prepare a defense, that the Government is not required to produce the firearms at trial and can present proof by testimony of witnesses or otherwise, and Counts Two and Three should not be dismissed merely because Defendant alleges the Government will fail to produce sufficient evidence to prove the charges.

Also relevant here is that on August 16, 2022, the District Attorney's Office in the Southern Judicial Circuit filed a motion for order of forfeiture in the Superior Court of Colquitt County, Georgia, seeking forfeiture of property including $5,600 in United States currency and four firearms identified as one SKS 7.62 Rifle (S/N 7103980), one Ruger 9mm pistol (S/N 454-56803), one Bushmaster Rifle (S/N BK1910017), and one Jennings 9mm pistol (S/N undetermined) (together, the "Forfeited Property") that was seized from the Defendant's residence on November 11, 2021. The state forfeiture action was brought against Defendant as the Purported Owner/Interest Holder of the Forfeited Property. The motion was served on Defendant (Doc. 74-2 at 7, 13), and a motion to intervene was sent to the District Attorney's Office by attorney Gary Lamar, Jr., on behalf of Ella Mae Randall, Defendant's domestic partner (*Id.* at 13). Eventually, a consent agreement of forfeiture was entered into among the State of Georgia, Defendant, and Ms. Randall. Therein, Defendant and Ms. Randall relinquish all rights they have in the "seized four firearms found within [their] residence." (*Id.*). With respect to the cash, the parties agreed that $3,000 would be turned over to Mr. Lamar to be held in trust for Ms. Randall's benefit and the remaining $2,600 would be forfeited to the State. (*Id.*) Defendant signed the consent agreement as "Interest Holder," Ms. Randall signed as "Intervenor/Interest Holder." (*Id.* at 14). Although Defendant states in his Motion to Dismiss that he was not represented by counsel with respect to the consent agreement, Mr. Lamar signed the agreement twice as "Attorney for Interest Holder" beside both the Defendant's and Ms. Randall's signatures. (*Id.*).

"[C]riminal prosecutions must comport with prevailing notions of fundamental fairness[,]" which requires that "criminal defendants be afforded a meaningful opportunity to

present a complete defense. To safeguard that right, the [Supreme] Court has developed 'what might loosely be called the area of constitutionally guaranteed access to evidence.'" *California v. Trombetta*, 467 U.S. 479, 485 (1984) (citation omitted). One of these guarantees requires that exculpatory evidence must be turned over to a criminal defendant. *Id.* In *Trombetta*, the Supreme Court considered for the first time the extent of the government's duty to take affirmative steps to preserve evidence on behalf of criminal defendants. *Id.* at 486. The Supreme Court held:

> Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*Id.* at 488–89. In *Trombetta*, the defendants moved to suppress incriminating breathalyzer tests because California had not retained their breath samples. Their motions were denied at the trial level. The California Court of Appeals reversed that decision, the California Supreme Court denied certiorari, and the United States Supreme Court granted certiorari. Defendants each asserted that if his breath sample had been preserved, he would have been able to impeach the incriminating breathalyzer test. *Id.* at 483–84. The breath samples were not preserved per California's policy which the Supreme Court found was not constitutionally defective. *Id.* at 488. There was no evidence that California authorities destroyed the breath samples in a calculated effort to prevent disclosure requirements or because of any animosity towards the defendants. *Id.* Rather, in failing to preserve the samples, the officers were acting in good faith and in accordance with their normal procedures. *Id.* The Supreme Court noted that while preservation of the breath samples might conceivably had contributed to the defendants' defense, given the information as to the reliability of the testing instrument, those chances were low. *Id.* at 489. The Court noted that even if the breath samples might have been exculpatory, "it does not follow that [defendants] were without alternate means of demonstrating their innocence[,]" including exercising their rights to cross-examine the government's witnesses in an "attempt to raise doubts in the mind of the factfinder whether the test was properly administered." *Id.* at 490.

    The Government cites *Parker v. United States*, 801 F.2d 1382 (D.C. Cir. 1986) as support for its argument that it is not required to put the firearms into evidence at trial and that it can

4

rely on eye-witness testimony. In *Parker*, the Government did not produce the weapon defendant carried during an armed bank robbery but offered only the testimony of the two bank employees who witnessed the crime and described the firearm carried by defendant. *Id.* at 1383. The D.C. Circuit affirmed that the testimony of the bank employee eye-witnesses—as opposed to an expert on firearms—was sufficient to permit a reasonable jury to infer that defendant was carrying a firearm and affirmed the district court's denial of defendant's motion for judgment of acquittal.[3]

Similar to *Tombetta*, the Government contends the firearms here were destroyed in accordance with an order of distribution entered in accordance with the forfeiture motion and consent agreement of the Defendant, Ms. Randall, and the State of Georgia. Per that order, "all four firearms shall be destroyed in accordance with local policy of the appropriate agency in custody of said firearms."[4] (Doc. 82 at 3). At this time, there is no evidence of animosity between the state officials and the Defendant or that the firearms were destroyed to prevent the state from being required to produce them to Defendant. While showing Defendant's fingerprints were not on the firearms might conceivably have contributed to his defense here, there is no evidence that a federal action was expected to be filed at the time state officials destroyed the firearms. Further, the exculpatory value of evidence that Defendant's fingerprints were not on the firearms would likely be low as actual possession of a firearm is not the sole method of possession for purposes of establishing the elements of the firearm charges against the Defendant. *See Trombetta*, 467 U.S. at 489–90.

Also as noted by the Government, and as found in *Tombetta*, Defendant is not without alternate means of demonstrating his innocence, including exercising his right to cross-examine the Government's witnesses in an attempt to raise doubts in the mind of the jury that the police report misrepresents his statements regarding ownership of the firearms and in

---

[3] The Government also cites *United States v. Adams*, 137 F.3d 1298 (11th Cir. 1998) as support for its assertion that it can present proof of possession of the firearm through means other than producing the actual firearm. (Doc. 82 at 5). In doing so, the Government attributes the following quote to *Adams*: "The government was not required to produce an actual firearm at trial or prove the specific manufacturer or serial number of the firearm in question." (*Id.* citing *Adams*, 137 F.3d at 1299–1300). However, that quote is not found in the text of the *Adams* decision. Further, because the firearm was in evidence in *Adams*, the quote would arguably have been dicta because it was not relevant to the *Adams* court's decision. *See Adams*, 137 F.3d at 1300 n.2. The issue in *Adams* was whether a firearm had to be operable for purposes of § 922(g)(1).

[4] Although copies of the motion for forfeiture and consent agreement are attached to the Motion to Dismiss, neither party provided a copy of the order of distribution.

raising questions as his assertions that the Government's photographs are incomplete or fail to depict all the firearms. In his Motion to Dismiss, the Defendant requests the Court take on the role of the jury and determine the weight and credibility of the Government's evidence as to Counts Two and Three. The Court declines to do so.

Accordingly, Defendant's Motion to Dismiss Count Two and Count Three (Doc. 74) is **DENIED**.

### B. Motions *in Limine*

The true purpose of a motion in limine is to avoid the introduction of evidence at trial that is "clearly inadmissible on all potential grounds" and could irretrievably impact the fairness of trial. *Royal Marco Point 1 Condo. Ass'n v. QBE Ins.*, No. 2:07-cv-16, 2011 WL 470651, at *2 (M.D. Fla. Feb. 2, 2011) (citing *Luce v. United States*, 469 U.S. 38, 41 (1984)). But the context at trial often determines the admissibility of evidence and, for this reason, "i[n] limine rulings to admit or exclude evidence are always preliminary and conditioned on what the evidence shows at trial." *Ohler v. United States*, 529 U.S. 753, 757 n.3 (2000). Furthermore, a trial court can promptly instruct a jury to disregard improper testimony or inadmissible evidence, and "[i]n many such cases the jury can and will follow the trial judge's instructions to disregard such information." *United States v. Astling*, 733 F.2d 1446, 1455 (11th Cir. 1984); *United States v. Fuentes*, 521 F. App'x 911, 911 (11th Cir. 2013). A motion in limine ruling has no impact on counsel's duty to make proper and contemporaneous objections at trial as to any evidence or argument they consider inadmissible or improper. *See Cephus v. CSX Transp., Inc.*, 771 F. App'x 883, 894–95 (11th Cir. 2019). As such, the Court disfavors motions in limine.

No counsel, party, or witness may reference excluded evidence before counsel first notices the Court and opposing counsel outside of the presence of the jury and obtains the Court's ultimate ruling regarding the same. Counsel shall also accordingly instruct their witnesses. Counsel shall make proper and timely objections at trial as to any evidence or argument they consider inadmissible.

With these factors in mind, the Court addresses each motion *in limine* in turn.

### 1. Controlled Buys Motion

Defendant seeks to exclude all references to any alleged controlled buys. The Government states it has not charged Defendant with any offenses related to the controlled buys conducted prior to the search warrant in this case. The Government does not intend to reference the controlled buys at trial unless Defendant opens the door. The Government points out that Defendant has made several references to the controlled buys in Defendant's Motion to Dismiss. In the event Defendant references the controlled buys in cross-examination or in his case in chief, then the Government may seek to rebut issues as needed. Based on the Government's statements, the Defendant acknowledged that the Controlled Buys Motion is moot, but reserves the right to request reconsideration if this issue arises during the trial. (*See* Doc. 109).[5]

Based on the foregoing, the Court finds the Controlled Buys Motion is moot. Accordingly, Defendant's Motion *in Limine* to Exclude all References to any Alleged "Controlled Buys" in this Case (Doc. 75) is **DENIED, WITHOUT PREJUDICE, as MOOT.**

### 2. Jail Calls Motion

Defendant states the Government has served Defendant with hundreds of recorded jail calls from April 2023 through August 2024. Defendant contends that none of the calls include evidence that is relevant to the charges against Defendant and seeks to preclude the Government from introducing any audio of jail calls at trial.

Per the Government, it has not identified any particular calls it anticipates using, and it is not required to do so. The Government contends the motion to exclude all the calls without reference to any specific calls is premature. The Government suggests that it is appropriate to hold the motion in abeyance so the Court can address the issue when, and if, a call is tendered. At that time, the Court can review the content of the call, the purpose for which it is being offered, and assess the propriety of it admission. Based on the Government's statements, the Defendant acknowledged that the Jail Calls Motion is moot, but reserves the right to request reconsideration if this issue arises during the trial. (*See* Doc. 109).

---

[5] Joint Response to Court Order Dated August 19, 2025 (Doc. 109) filed September 2, 2025.

Based on the foregoing, the Court finds the Jail Calls Motion is moot. Accordingly, Defendant's Motion *in Limine* to Exclude all Jail Calls (Doc. 76) is **DENIED, WITHOUT PREJUDICE, as MOOT.**

### 3. Prior Convictions Motion

On June 27, 2025, the Government filed a Notice of Intent to Introduce Evidence of Defendant's Prior Convictions (Doc. 85). With respect thereto, Federal Rule of Evidence 404 provides:

> (b) Other Crimes, Wrongs, or Acts.
>
> > (1) Prohibited Uses. Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> >
> > (2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.
> >
> > (3) Notice in a Criminal Case. In a criminal case, the prosecutor must:
> >
> > > (A) provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it;
> > >
> > > (B) articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose; and
> > >
> > > (C) do so in writing before trial—or in any form during trial if the court, for good cause, excuses lack of pretrial notice.

Fed. R. Evid. 404(b). The Government intends to offer evidence of the following two convictions of Defendant: (1) on March 8, 2007, Defendant pled guilty to a lesser included offense of Possession of Cocaine and was sentenced to four years imprisonment (*see* Doc. 85 at 3 & Doc. 85-1 at 2–4); and (2) on May 6, 2021, Defendant pled guilty to Possession of Methamphetamine and Possession of a Firearm by a Convicted Felon and was sentenced to eight years imprisonment (*see* Doc. 85 at 3 & Doc. 85-2 at 1–2).

In the Prior Convictions Motion, Defendant indicates he "is willing to stipulate that he was a convicted felon at the time of the charges in this case and that he knew of his status as a convicted felon." (Doc. 77 at 2). Therefore, Defendant argues that all references to his prior criminal history should be excluded as prejudicial. The Government agrees that if Defendant

stipulates to his prior conviction in order to prove elements 2 and 3[6] of Count Two of the Superseding Indictment—Possession of a Firearm by a Convicted Felon—then the Government will not move to admit evidence of his prior criminal history for that purpose. (Doc. 86 at 3).

In addition, the Government contends that Defendant's prior criminal history may be relevant at trial for impeachment purposes or as evidence to prove knowledge, intent, and lack of mistake or accident. The Government reserves the right to seek to introduce evidence of Defendant's prior convictions for such other purposes, if appropriate. As to such other purposes, the Court finds that it would be unwise to make any ruling or findings as to the admissibility of the Defendant's prior criminal conduct, where the admissibility of such evidence will depend on the circumstances under which it is offered and the purpose for which it is offered. Rather, the Court will rule on the issue of admissibility at the appropriate time.

If the Government seeks to introduce any information related to Defendant's prior criminal history or conduct for purposes other than as is apparently to be stipulated as noted above, it shall lay the proper foundation that such evidence is relevant and admissible. That foundation shall be presented upon proper notice to opposing counsel and the Court, and outside of the hearing of the jury. If, at that time, the Court deems Defendant's prior criminal history or conduct admissible for certain purposes, it will give an appropriate limiting instruction or instructions to the jury if, and when, the evidence is introduced, and in the final charge.

### III. CONCLUSION

In summary, the resolution of the Motions is as follows:

1. Defendant's Motion to Dismiss Count Two and Count Three (Doc. 74) is **DENIED, WITH PREJUDICE**.

---

[6] The Government did not set out the elements of the offense of Possession of a Firearm by a Convicted Felon in its response to Defendant's motion to exclude his prior criminal history (Doc. 86), but it did set out those elements in its response to Defendant's motion to dismiss Counts Two and Three (Doc. 82 at 4). In that document, elements 2 and 3 are: "(2) before possessing the firearm or ammunition, the Defendant had been convicted of a felony – a crime punishable by imprisonment for more than one year; and (3) at the time the Defendant possessed the firearm or ammunition, the Defendant knew he had previously been convicted of a felony."

2. Defendant's Motion *in Limine* to Exclude all References to any Alleged "Controlled Buys" in this Case (Doc. 75) is **DENIED, WITHOUT PREJUDICE, as MOOT**.

3. Defendant's Motion *in Limine* to Exclude all Jail Calls (Doc. 76) is **DENIED, WITHOUT PREJUDICE, as MOOT**.

4. If Defendant stipulates, as noted, then for purposes of Defendant's knowledge that he was a convicted felon, Defendant's Motion *in Limine* to Exclude all References to Mr. Murray's Prior Criminal History/Agreement to Stipulate as to Status as Convicted Felon (Doc. 77) is **DENIED, WITHOUT PREJUDICE, as MOOT**. Resolution of the admissibility of Defendant's prior criminal history for other purposes is held in abeyance and the Court will rule on its admissibility for such purposes at the appropriate time and outside the presence of the jury.

**SO ORDERED**, this 27th day of October 2025.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE
UNITED STATES DISTRICT COURT**